Arguments not to exceed 15 minutes per side. Mr. Luchman for the appellant. Thank you. If it pleases the court, I'd like to, I'm not sure I'll use 10 minutes, but I'd like to reserve 5 for rebuttal. Sure. I think this is at heart a very simple case.   It's a very simple case. And one that in a way demonstrates how the evolution of personal injury law has not always, in my view, been to the benefit of justice or individuals who are injured. Well, I used to say as a defense lawyer, if you guys take away all the rules, which you were doing quite successfully, we wouldn't have a game to play, so it's coming around the circle now. It is indeed doing that, your honor. It's a tough doctrine that you're dealing with here. Well, it is except for this. The other side cites no Michigan authority, or actually no authority at all, if we are to accept, which pretty much nobody ever does, that unpublished opinions don't count for anything. They present an unpublished Ohio opinion, not a Michigan opinion, saying that a guy who bent over under a fire extinguisher and stood up and made contact with it, that it was open and obvious, according to Ohio doctrine, that he could be injured under those circumstances. And whether that's true or not, I don't know or particularly care, because this is a completely different case. This is a situation where a fire extinguisher is mounted on a wall and Myers knows from what it did in other stores that there are better ways safer ways to secure fire extinguishers. You suggest it's with a strap or something like that? Well, on a pedestal with a rubber boot, there are numerous ways that are part of the record, other than just hanging by an S and being so fragile that incidental contact with a cart which is a hugely foreseeable event causes the fire extinguisher to come down and essentially shatter the foot of someone, such as Ms. Johnson. It was foreseeable incidental contact. The height of the cart is the height of the fire extinguisher. And in this case, my client bumped into it with a part of the cart near the handle, but it's incidental that the contact took place. That way it could have been a child hitting the thing or any number of ways, once you have carts that are high enough that they line up with the fire extinguishers, and fire extinguishers so poorly secured to the wall. Now, do you have any actual evidence that it was improperly or unsafely mounted, apart from what you just recited, you know, the fact that it fell from this contact? Well, I believe that Rothman testified that it should have been secured more securely than by an S-hook. Your expert, Rothman? Yes, that's probably the slenderest part of our case, Rothman and his opinions. Although, I think that we get by under Rule 702 because he possesses technical knowledge as a lifelong architect and being involved in the design and maintenance of buildings. But, you know, qualifications and reliability are two different things. I understand that. I don't really see this so much as a Dawbert case, Your Honor, as a case involving circumstantial evidence of negligence. If I lean on this podium and it collapses to the floor and I'm somehow injured, the podium's obvious. Here it is, and being an old fellow, I am leaning on it. But, the defect is not obvious. How is the defect then obvious to the defendant? Isn't that the catch-22 that Michigan puts you in? If it's not obvious to you, then it's not obvious to the shopkeeper. Well, the shopkeeper is created as a condition. If I look at the law in Michigan, that seems to be the catch-22. Well, their agents, servants, and employees, mainly agents, installed it. And they are responsible, under Michigan law, for occult, for lack of a better word, hazards, unforeseeable hazards, unforeseeable to the public, hazards on their premises. If you parse out Michigan Civil Jury Instruction, 1903... But you're not saying you couldn't go around this without being... without getting through. I mean, you didn't have to hit it. That's true. They invite... I'm sorry, I didn't mean to... Their unforeseen hazards that they recognize are like deep cesspools that you've got to walk through to get to the place, the business or something, that you couldn't see the deep. Well, it's foreseeable with people being distracted by displays that are intended to distract them. And merchants will do that. They've decided nonetheless. Yeah, I know. But it's foreseeable that children will be operating carts, that carts will collide into each other, and that there will be contact with the walls or objects on the wall. I grant you that in the best of all possible worlds, if you see a big red, and I'm sure Mr. Steck will tell you all about how obvious the fire extinguisher was, and it wasn't camouflaged. We certainly concede that point. Ideally, you don't touch it. But if you have thousands of people in a store over a weekend or in a week, somebody, sooner or later, is going to make incidental contact with that fire extinguisher. And it should be. And if it falls to the ground, it was improperly secured, that is to me, something that doesn't happen in the absence of negligence if it's just incidental contact, as opposed to trying to knock it down. You have to have an expert to testify to that, if there's a better way of something under Michigan law, just the jury decides it. Well, he did testify. No, but he got disqualified, didn't he? Yeah, and we are contesting that, partly because this isn't... If you don't have his testimony, though, do you have a case? Yes. I believe we do. Based on what? Well, essentially the same thing as if this podium collapses, it's not something that happens in the absence of negligence. So, I mean, it sounds like you need to make out a Ray Zipsa theory in order to go forward. Is that fair? Well, Michigan calls it circumstantial evidence of negligence, but yes. The trouble with that is with a fire extinguisher, if you want it, you have to get it out quickly, too. So you've got this balance between the two. If you've got a fire, you want to get it quickly. You don't want it all hung up. Right. And so you've got this balance between the two, and that's why Ray Zipsa doesn't really work with this. Well, I think it... Or circumstantial evidence. If you have it, as we have shown you, on a pedestal or on other means of having the fire extinguisher accessible, but still not amenable to falling to the ground on incidental contact, then you skin that cat either way. It's safe from the inevitable incidental contact that will occur, but it's still reachable from the wall in the event of a fire. Going back for the moment to the jury instruction, there has to be a condition. A fire extinguisher wasn't the condition. The occult, weak hinging of it was the condition. And there has to be an unreasonable risk of harm. And I just... It does not strike me as someone who believes himself to be possessed of at least a modicum of common sense that this isn't an unreasonable risk of harm if it falls on the most incidental of incidental contact. That's why I was wondering whether you need an expert on things like fire safety, because as Judge Sir Heinrich was saying, there's certain things that have to be available to the general public. You can't lock a fire extinguisher in with a padlock because it's of no use, right? And you can't have it up so high that nobody can reach it. Of course, you're not going to hit it with a cart, but you can't get it for a fire. Well, I don't think the magistrate was necessarily correct in excluding Mr. Rothman simply because he wasn't in the fire extinguisher business. He's had plenty of exposure to fire extinguishers over the years as an architect. And this isn't as if it was a medical malpractice case in Michigan where the statute says that you have to have a board-certified specialist testifying against somebody who's board-certified in that specialty. I think there's more latitude under 702 in a case such as this. So I think that the judge was wrong to exclude the expert, but I also stand by the assertion that under these facts, an expert is nice to have and it's what everybody does in the 21st century, but not necessarily the case. Thank you. Thank you. You'll have your rebuttal here from Mr. Stett. Good afternoon, Your Honors. If it pleases the Court, the trial court's granting of summary judgment in favor of Moyer could and should be affirmed for not only two reasons, as the trial court indicated, but for three reasons. The third goes to Your Honorable Judge Sir Heinrichs, called it Catch 22, but that is if you apply the same theory that the plaintiff is asking you to apply to Bambi Johnson, to Moyer, Moyer did not have notice or knowledge that this was some unreasonably dangerous condition. With respect to the open and obvious doctrine, Michigan law makes very clear, and one of the principles, as he spouts in the Hofner v. Langtel case, which we cite, indicates that that both the possessor of land and those who come onto it to exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitee's obligation to assume personal responsibility to protect themselves from apparent dangers. Here, the plaintiff had personal responsibility. The trouble with the open and obvious doctrine, it seems to me, is that it doesn't take into account how people act. I mean, Myers displays its merchandise specifically so that the person pushing the cart will look at its merchandise. Specifically, companies fight to where that merchandise can be so that they can do it. And then to say you've got to, when the owner does that, and then say you've got to look out for yourself, again, is a little troubling. Their blanket statement doesn't seem to me to ever take into account how people actually react. Well, Your Honor, that's a good point, as espoused by the plaintiff's bar, for the most part. And if you look at the way we live as individuals, whether I'm walking down the aisle of a grocery store, I have to balance. I have to look and see what draws my attention, plus looking out for my own safety. Just as we're driving down the road in our vehicles. We pass by hundreds and thousands of billboards every time we go on a road trip. That doesn't give us the right to be so distracted that we deviate from our responsibilities to ourselves to have personal safety and to protect ourselves. And I submit to the Court that if you change the facts just slightly here, the open and obvious doctrine has not been so sliced and diced and watered down so finely to the point that the plaintiff suggests. Change the facts that Bambi Johnson, being inattentive, pushing the shopping cart, runs into a merchandise rack and an object falls off. I'm sure Your Honor, Sir Heinrich has been in the Meijer stores before. And you can see that there are objects that if you crash into one of those and one of them falls off and lands on your foot, you might be injured. That doesn't alleviate that situation from the open and obvious doctrine. Similarly, if Bambi Johnson inattentively pushes this cart and walks right into the edge of the middle shelf and cuts her knee, she can't be excused from the open and obvious doctrine simply by arguing, oh, I didn't realize it was so sharp. I didn't realize that I would lacerate my knee. So again, the Michigan Supreme Court balances those obligations. Now, and if you want to argue, as the plaintiff's part does, that the open and obvious doctrine has gone so far, and if you apply that to this case, as Your Honor kind of alluded to earlier, the problem here is that if Mrs. Johnson's theory is accurate, that this wall-mounted fire extinguisher wasn't giving off any indications that it was a dangerous condition, then I submit to the court that there's no evidence in this record to provide any evidence that Meijer knew or should have known. The affidavit that was supplied to the trial court in response to the plaintiff's reply to our motion for Julie Dreyer advised the court, which was admissible as an affidavit signed under oath, that Meijer had never had an incident like this happen before with a fire extinguisher getting knocked off of its mounting. That affidavit further indicated that Meijer didn't install this. They hired outside contractors. They ordered fire extinguishers. They were applied by a competent contractor utilizing the brackets and the hardware that came with the fire extinguishers. Why doesn't Mr. Leckman have a point that the fact that the thing falls down from what is fairly foreseeable contact is evidence that one way or another it was not properly mounted? Well, his own expert acknowledged, Your Honor, and I point this out at page 6 of my brief, that at page 27 of his testimony, he acknowledged that there's no evidence that the hardware was improperly mounted. He acknowledged that... Well, his expert didn't know anything about anything that was going on in this story. So let's set aside his expert. Why isn't...I mean, he calls it circumstantial evidence. Why doesn't he have a point about that? He doesn't have a point about that because the Michigan law with respect to circumstantial evidence has four factors that have to be complied with, and we address that at page 22 of our brief. This is the Ray Zipsa? This is the Ray Zipsa, yes. Mr. Hooshman refers to it as the circumstantial evidence doctrine. However, as we indicate at page 22, the four conditions that must be present are, first of all, it must be a kind which ordinarily does not occur in the absence of someone's negligence. Second, the event must have caused by an agency or instrumentality within the exclusive control of the defendant. And third, this is the important one. I submit two applies, but three is the key. Third, the event must not have been due to any voluntary action or contribution on the part of the plaintiff. Out goes the circumstantial evidence. So if he were to lean on the podium and it crashes down, that would not be an application of Ray Zipsa because he had leaned on the podium voluntarily? Well, it would not...he'd have to present some other evidence of negligence in the design or manufacture. I mean, if you just went like this and the thing collapsed on you, you'd be out of luck? I mean, I think most of us would be pretty skeptical of that. This appears to be rather sturdy, and I think that if I looked at it and eyeballed it, I wouldn't have much reservation in doing that. However, if I look at something that's mounted on a wall, and whether I bang into it with a shopping cart or I bang into it with my shoulder and it comes off, that's something that's clearly, I believe, someone with common sense and ordinary prudence would look at that and recognize, I need to avoid it. And if this is so foreseeable, then why haven't there been other incidences? So, in summary, I submit to this court... Will you be...someday they find other instances, will you be arguing that you can't prove negligence by other incidents? Well, I think that if other incidents take place, it would take away a defense argument that it was unforeseeable. You know, so if the plaintiff says it's unforeseeable to her, and we have five other incidences, I could not stand up before you and say, well, it's unforeseeable to us too. And in fact, those basically are the cases that Mr. Luchman cites in support of his res ipsa loca argument. So, in concluding, I would just indicate to this court, as Mr. Luchman started his arguments and talked about in response to your Honorable Heinrich's comments, how it's swinging back in terms of justice, it would be an injustice here if Bambi Johnson, who had an obligation to make reasonable and prudent observations for her own safety, is allowed to be excused from that clear evidence that she was inattentive, and instead the burden is put on my client when there's absolutely no evidence in this record to suggest that we knew or should have known that there was anything about this fire extinguisher and the way that it was mounted that posed a reasonable risk of harm to the plaintiff. Thank you. Thank you, Mr. Steck. I'm not going to use the whole five minutes unless I am questioned. Mr. Steck's argument takes me back to the first ten years I was practicing when I did exclusively defense work. And in Michigan at that time, Judge Sir Heinrich will remember, had contributory negligence. So if you were just one iota negligent, you were out of luck. And an equation I... One night the court said that we don't have contributory negligence. Not the legislature or anybody else. Yes, they did. But anyway, here we are. I don't think it has hurt Judge Sir Heinrich's career with all due respect. The equation I used in slip and fall cases as a defendant was, well, if the hazard is so egregious, why didn't the plaintiff see it? And that was usually a winner, but I submit that this hazard wasn't egregious. It was a cult. It was hidden. And I also was very enamored of the it never happened before argument, which I think has scant, if any, legal relevance. And besides, we know that something similar happened in Ohio. Unpublishedly, if that's a word. And the old dog of personal responsibility is trotted out, and I think we all seek in our lives to be personally responsible for our actions and inactions. But that goes to comparative negligence, if indeed there is any. Mr. Stack says there is. I think if there is, it's scant. But Bambi Johnson's  And I think that's something that should be viewed through that prism, and not as something that would bar the case. As far as Myers' knowledge, we've been through this. They're a very sophisticated retail chain. They have secured fire extinguishers in a far better and safer manner than their other stores, and they, through their agents, the installers, created the condition. Thank you. Thank you. Thank you both. Case will be submitted. Court may call the next case.